UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WILFREDO MUNIZ,<br>Plaintiff,<br><br>v.<br><br>ROLLIN COOK, et al.,<br>Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | CASE NO. 3:20-cv-1533 (MPS)<br><br><br><br>DECEMBER 3, 2020 |

## ORDER

Plaintiff Wilfredo Muniz, incarcerated at Garner Correctional Institution in Newtown Connecticut, filed this case under 42 U.S.C. § 1983. The plaintiff names fifteen defendants: Rollin Cook, Angel Quiros, Cheryl Cepelak, William Mulligan, Nick Rodriguez, David Maiga, Zelynette Caron, Ibes, Ouellette, Canales, Grimaldi, Leone, Laprey, Cieboter, and E. Tugie. The plaintiff contends that the defendants denied him due process. He seeks damages and injunctive relief.

The Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. This requirement applies to all prisoner filings regardless whether the prisoner pays the filing fee. *Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 159 (D. Conn. 2005) (citing *Carr v. Dvorin*, 171 F.3d 115 (2d Cir. 1999) (per curiam)). Here, the plaintiff is proceeding *in forma pauperis*.

Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted).

"Although courts must interpret a pro se complaint liberally, the complaint will be dismissed unless it includes sufficient factual allegations to meet the standard of facial plausibility." *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

I.     Allegations

On March 13, 2020, Warden Caron placed Carl Robinson Correctional Institution ("Robinson") on modified lockdown in response to the COVID-19 pandemic. ECF No. 1 ¶ 19. Visits were suspended, the dining hall was closed, inmates were fed in their units, and normal movement was restricted. *Id.*

On April 1, 2020, the plaintiff witnessed a code being called. *Id.* ¶ 20. Inmates in units three and four refused to collect their food trays. *Id.* The plaintiff later learned that the inmates were refusing to eat to focus attention on unsanitary and hazardous housing conditions. *Id.* On April 3, 2020, officers approached the plaintiff during midday count and escorted him to the day room where he was placed in handcuffs and shackles and transferred to Northern Correctional Institution ("Northern"). *Id.* ¶ 21. The transfer was recommended by Warden Caron and

approved by Director Maiga.  *Id.*

At Northern, the plaintiff was held by two officers in a holding cell while a third officer removed his clothing.  *Id.* ¶ 22.  He was placed on administrative detention pending an administrative segregation hearing.  *Id.*  The plaintiff was given a copy of a disciplinary report on April 5, 2020.  *Id.* ¶ 23.  On April 7, 2020, disciplinary investigator Leone gave him an inmate interview form to complete.  *Id.* ¶ 24.  On April 24, 2020, the plaintiff was given the opportunity to provide a second statement.  *Id.* ¶ 25.  He declined but requested that video footage be reviewed.  *Id.*

The plaintiff attended a disciplinary hearing on May 12, 2020.  *Id.* ¶ 27.  Hearing Officer Grimaldi told the plaintiff that his chosen advisor was not available and that Intelligence Officer Cieboter was the replacement.  *Id.* ¶ 28.  Hearing Officer Grimaldi reviewed the facts and found the plaintiff guilty of the charge.  *Id.* ¶ 30.  In the Disciplinary Process Summary Report, Hearing Officer Grimaldi stated that multiple sources of information indicated that the plaintiff took a leadership role in the hunger strike.  *Id.* ¶ 32.

The plaintiff alleges that no hunger strike occurred in his housing unit and contends that the sources of information were referencing an attempted work stoppage, not a hunger strike.  *Id.* ¶¶ 33-34.  The hearing officer stated that video could not be reviewed because no times were specified in the request.  *Id.* ¶ 35.  The plaintiff was not afforded an opportunity to confront, and discredit, the sources of information.  *Id.* ¶ 37.  The plaintiff's advisor stated in his report that he reviewed some video footage, but the period was too broad.  *Id.*

On May 18, 2020, the plaintiff had an administrative segregation hearing by videoconference with Hearing Officer Tugie.  *Id.* ¶ 40.  The plaintiff again requested video

3

footage to show that he did not approach inmate workers to orchestrate a work stoppage. *Id.* ¶ 41. The plaintiff did not prevail at the hearing and was placed in Administrative Segregation for threatening safety and security of the facility, staff, and inmates by attempting to orchestrate a work stoppage during a pandemic. *Id.* ¶¶ 42-44. He was sanctioned with loss of risk reduction earned credit and is required to complete the Administrative Segregation Program at Northern and Garner Correctional Institution. *Id.* ¶¶ 47, 49.

II.     Analysis

The plaintiff contends that he was denied fair disciplinary and administrative segregation hearings. He characterizes the deprivations as violation of his rights under the Fifth, Eighth, and Fourteenth Amendments.

Because the plaintiff was subjected to "mixed sanctions," *i.e.*, sanctions affecting both the duration and conditions of his confinement, his due process claims are barred by the favorable termination rule set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994). However, the Second Circuit has held that a prisoner subject to mixed sanctions can proceed under section 1983 if he foregoes, for all time, any challenges to the sanctions affecting the duration of his confinement. *Peralta v. Vasquez*, 467 F.3d 98, 104 (2d Cir. 2006). The plaintiff has filed a notice expressing his willingness to forego such a challenge. ECF No. 9. Thus, the Court may review his claim.

   A.    Fifth Amendment

The Due Process Clause of the Fifth Amendment applies to the federal government while the Due Process Clause of the Fourteenth Amendment applies to the states. *Welch v. United States*, ___ U.S. ___, 136 S. Ct. 1257, 1261-62 (2016). As all defendants are state employees, there is no basis for a claim under the Fifth Amendment. Any Fifth Amendment claim is

dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

      B.      <u>Fourteenth Amendment</u>

The plaintiff contends that he was denied due process at the disciplinary and segregation hearings because he was not permitted to question the informants and the hearing officers did not review video footage to see whether he conversed with kitchen workers to encourage a work stoppage.

To state a claim for violation of his right to procedural due process, the plaintiff must allege facts showing that he had a protected liberty interest and that he was deprived of that interest without being afforded due process of law. *See Walker v. Fischer*, 523 F. App'x 43, 44 (2d Cir. 2013) (citing *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001)). The Due Process Clause, standing alone, generally does not create a protected liberty interest in conditions of confinement as long as the conditions are "within the normal limits or range of custody which the conviction has authorized the State to impose." *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (finding no protected liberty interest in freedom from interstate prison transfer, even to a maximum security facility, because prison officials have discretion to transfer prisoners among correctional facilities "for whatever reason or for no reason at all"). However, there are circumstances under which a state statute, policy, or regulation can create a protected liberty interest relating to conditions of confinement.

In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court held that a liberty interest warranting due process protection "will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection under the Due Process Clause of its own force . . . nonetheless imposes an atypical and

significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484. Thus, to assess the plaintiff's claim, the Court must determine whether the sanctions imposed at the disciplinary and administrative segregation hearings constitute an atypical and significant hardship.

At the disciplinary hearing, the plaintiff received sanctions of fifteen days confinement in punitive segregation, ninety days loss of commissary privileges, and loss of sixty days of risk reduction earned credit ("RREC"). ECF No. 1 at 26. The plaintiff has forgone any challenge to the loss of RREC. Thus, the Court considers only the punitive segregation time and loss of commissary privileges.

In *Sandin*, the Supreme Court held that confinement in the restrictive housing unit for thirty days for disciplinary reasons did not implicate a constitutionally protected liberty interest. 515 U.S. at 485-86. Further, the Second Circuit has held that confinement in restrictive housing for less than 101 days does not constitute an atypical and significant hardship sufficient to state a claim under *Sandin*. *See Sealey v. Giltner*, 197 F.3d 578, 589 (2d Cir. 1999) (finding that 101-day confinement in restrictive housing, while "doubtless unpleasant," did not constitute atypical and significant hardship); *Lewis v. Sieminski*, No. 3:08-CV-728(JCH), 2010 WL3287991, at *6 (D. Conn. Sept. 22, 2010) (noting that "the decisions in the Second Circuit are unanimous that keeplock or [segregated housing unit] confinement of 20 days or less in New York prisons is not 'atypical or significant hardship' under *Sandin*").

As the Second Circuit has held that a brief confinement in restrictive housing, such as fifteen days, does not constitute an atypical and significant hardship, this sanction is insufficient to support a claim for denial of due process. The additional sanction of ninety days loss of

6

commissary privileges, imposed after the plaintiff's release from punitive segregation, does not alter this determination. *See Baldwin v. Arnone*, No. 3:12-cv-243(JCH), 2013 WL 628660, at *3, 8 (D. Conn. Feb. 19, 2013) (holding that sanctions of fifteen days confinement in punitive segregation followed by thirty days loss of recreation and ninety days loss of telephone privileges insufficient to demonstrate atypical and significant hardship to support due process claim under *Sandin*) (citing cases).

As the plaintiff's disciplinary sanctions, fifteen days in punitive segregation and ninety days loss of commissary privileges, do not constitute an atypical and significant hardship, he fails to state a plausible due process claim based on the alleged improprieties at the disciplinary hearing.

The plaintiff's second due process claim relates to the administrative segregation hearing. The Second Circuit has held that the *Sandin* analysis should be applied to determine if placement in non-punitive administrative segregation implicates a protected liberty interest. *Arce v. Walker*, 139 F3d 329, 334-35 (2d Cir. 1998). To determine whether conditions of segregated confinement are atypical and significant, the court considers both the duration of segregated confinement and the conditions of that confinement. *Palmer v. Richard*, 364 F.3d 60, 64 (2d Cir. 2004); *see also Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000) ("[T]he duration of [segregated] confinement is a distinct factor bearing on atypicality and must be carefully considered.").

The plaintiff alleges that he was transferred to Northern in April 2020. He alleges that he must complete the program at Northern and Garner Correctional Institutions. His current address shows that he has been progressing through the program as he is now confined at Garner. Thus,

he has been confined in the program for eight months.  Although the plaintiff alleges no facts regarding the conditions of his confinement, the Court will assume, for purposes of initial review only, that the plaintiff has a protected liberty interest.

The Supreme Court requires that an inmate sent to Administrative Segregation be afforded "some notice of the charges against him and an opportunity to present his views to the prison officials charged with deciding whether to transfer him to administrative segregation." *Hewitt v. Helms*, 459 U.S. 460, 476 (1983).  Due process also requires that the decision be supported by "some evidence." *Superintendent Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

The Restrictive Status Report of Hearing for Placement of Removal states that the plaintiff was recommended for placement on administrative segregation based on "facility intelligence." ECF No. 1 at 32.  Hearing Officer Tugie states that she relied on a letter from Warden Caron requesting placement and an incident report from April 3, 2020. *Id.*  The Court assumes this is the same incident report that supported the April 4, 2020 disciplinary charge.  That report was based on two "sources of information" who were not identified.  ECF No. 1 at 26.

In *Taylor v. Rodriguez*, 238 F.3d 188 (2d Cir. 2001), the Second Circuit considered the use of confidential information in connection with a gang classification.  The court held that a decision based on confidential information must include "examination of indicia relevant to an informant's credibility" to ensure a fair hearing and discipline based on reliable evidence.  *Id.* at 194.  Although the informants here were described as sources of information rather than confidential informants, their identities were concealed.  The plaintiff alleges that he was not

8

able to confront the inmates and questions their credibility, stating that video footage would not show him encouraging the kitchen staff to engage in a work stoppage and that inmates would say anything to satisfy correctional staff.  Based on the allegations, it does not appear that the requirements for due process were met at the administrative segregation hearing.  Accordingly, this claim will proceed for further development of the record.

      C.      <u>Eighth Amendment</u>

The plaintiff also characterizes his due process claim as an Eighth Amendment violation. The Eighth Amendment prohibits cruel and unusual punishments, including punishments that involve the unnecessary and wanton infliction of pain.  *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994).  The plaintiff must show that the conditions resulted in an "unquestioned and serious deprivation of basic human needs," and that the defendants imposed the conditions with deliberate indifference.  *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986)).

The plaintiff does not allege that his placement in administrative segregation deprived him of a basic human need or involved the wanton and unnecessary infliction of pain.  Indeed, his claim is based on the process afforded him at the hearing, not his resulting restrictive confinement.  Thus, he fails to state a plausible Eighth Amendment claim.  *See McCarthy v. Yost*, No. 01 Civ. 9590 (KMW)(FM), 2003 WL 26112500, at *7 (S.D.N.Y. Feb. 18, 2003) (despite restrictive conditions, "the mere act of confining an inmate in a SHU does not violate the Eighth Amendment" (citing *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 1985))), *report and recommendation rejected in part on other grounds by* 2003 WL 26112501 (S.D.N.Y. Sept. 3, 2003).

D. <u>Defendants Cook, Quiros, and Cepelak</u>

The plaintiff alleges that defendants Cook, Quiros, and Cepelak are the former commissioner, current commissioner, and deputy commissioner. He includes no other allegations against them.

To state a cognizable claim for supervisor liability, the plaintiff must show that:

> "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring."

*Shaw v. Prindle*, 661 F. App'x 16, 18 (2d Cir. 2016) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).

The plaintiff includes no allegations against these supervisory officials and does not assert a claim against them under any of the *Colon* factors. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Accordingly, any claims against defendants Cook, Quiros, and Cepelak are dismissed.

E. <u>Defendants Ibes, Ouelette, and Canales</u>

The plaintiff describes these defendants as the supervisor of the intelligence officers and intelligence officers charged with investigating the disciplinary report. The plaintiff has no independent constitutional right to an investigation. *See Deshaney v. Winnebego Soc. Servs.*, 489 U.S. 189, 196 (1989) (The Due Process Clause "generally confer[s] no affirmative right to

governmental aid, even where that aid may be necessary to secure to life, liberty, or property interests of which the government itself may not deprive the individual."); *Altayeb v. Chapdelaine*, No. 3:16-cv-67(CSH), 2016 WL 7331551, at *5 (D. Conn. Dec. 16, 2016) (prisoner has no constitutional right to investigation or to have other inmates prosecuted); *Pine v. Seally*, No.9:09-CV-1198(DNH/ATB), 2011 WL 856426, at *9 (N.D.N.Y. Feb. 4, 2011) ("To the extent that plaintiffs attempt to assert a separate constitutional claim of 'failure to investigate,' the law is ... clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials.").

However, under certain circumstances, correctional officials charged with investigating or collecting evidence in connection with a disciplinary hearing may be involved in a claim for denial of due process. *See Pagan v. Venettozzi*, No. 9:18-CV-1094(TJM)(DJS), 2019 WL 850671, at *2 (N.D.N.Y. Feb. 22, 219) (citing cases). As the plaintiff fails to state a plausible due process claim relating to the disciplinary hearing (as opposed to the administrative segregation hearing), however, any due process claim against defendants Ibes, Ouelette, and Canales also fails and is dismissed.

IV.     Conclusion

The Fifth and Eighth Amendment claims, and the Fourteenth Amendment due process claim relating to the disciplinary hearing are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).

The case will proceed on the plaintiff's Fourteenth Amendment due process claim relating to the administrative segregation hearing against defendants Tugie, Mulligan, Caron, and Maiga.

The Court enters the following additional orders:

11

(1)     **The Clerk shall** verify the current work address for defendants Tugie, Mulligan, Caron, and Maiga with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet containing the Complaint and this Order to each defendant at the address provided within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on the thirty-fifth day after mailing.  If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his or her individual capacity and the defendant shall be required to pay the cost of such service.

(2)     **The Clerk shall** prepare a summons form and send an official capacity service packet to the U.S. Marshals Service.  The U.S. Marshal is directed to effect service of the Complaint on defendants Tugie, Mulligan, Caron, and Maiga in their official capacities at the Office of the Attorney General, 165 Capitol Avenue, Hartford, CT 06106, within twenty-one (21) days from the date of this order and to file a return of service within thirty (30) days from the date of this order.

(3)     T**he Clerk shall** send the plaintiff a copy of this Order.

(4)     **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5)     The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent.  If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above.  They also may include all additional defenses permitted by the Federal Rules.

(6)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be

completed within **seven months (210 days)** from the date of this order.  Discovery requests need not be filed with the court.

(7) All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(8) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court.  Failure to do so can result in the dismissal of the case.  The plaintiff must give notice of a new address even if he is incarcerated. The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If the plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address.  The plaintiff should also notify the defendants or the attorney for the defendants of his new address.

(10) The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court.  The plaintiff is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

(11) The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to the plaintiff.

**SO ORDERED** this 3d day of December 2020 at Hartford, Connecticut.

/s/
Michael P. Shea
United States District Judge