UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | : | |
|---|---|---|
| WILFREDO MUNIZ, | : | |
| Plaintiff, | : | CASE NO. 3:20-cv-1533 (MPS) |
| | : | |
| v. | : | |
| | : | |
| ROLLING COOK, et al., | : | |
| Defendants. | : | |
| | : | April 26 , 2021 |

**RULING ON DEFENDANTS' MOTION TO DISMISS**

Plaintiff Wilfredo Muniz has filed this action under 42 U.S.C. § 1983 challenging his placement in the Administrative Segregation Program. Following initial review, the following claim remains: a due process claim regarding his administrative segregation hearing against defendants Tugie, Mulligan, Maiga, and Caron ("the defendants").

The defendants have filed a motion to dismiss arguing that the plaintiff fails to state cognizable claims for denial of due process or supervisory liability and they are protected by qualified immunity. For the following reasons, the motion to dismiss is granted as to defendants Caron and Maiga but denied as to defendants Tugie and Mulligan.

I.  Standard of Review

To withstand a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard is not a probability requirement; the pleading must show, not merely allege, that the pleader is entitled to relief. *Id.* Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Id.* However, when reviewing a motion to dismiss, the court must draw all reasonable inferences in the non-movant's favor. *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012).

I. <u>Facts</u>

In March 2020, Carl Robinson Correctional Institution was placed on modified lockdown in response to the COVID-19 pandemic. ECF No. 1 ¶ 19. On April 1, 2020, inmates in two housing units refused to collect their food trays and a code was called. *Id.* ¶ 20. Two days later, on the recommendation of Warden Caron and Director Maiga, the plaintiff was transferred to Northern Correctional Institution and placed on administrative detention pending an administrative segregation hearing. *Id.* ¶¶ 21-22. The plaintiff also was found guilty on a disciplinary charge of having a leadership role in the April 1, 2020 hunger strike. *Id.* ¶¶ 30, 32.

On May 18, 2020, the plaintiff attended an administrative segregation hearing before Hearing Officer Tugie. *Id.* ¶ 40. The plaintiff asked her to review video footage to show that he did not approach inmate workers to orchestrate a work stoppage. *Id.* ¶ 41. Hearing Officer Tugie found the plaintiff guilty of threatening the safety and security of the facility, staff, and inmates by attempting to orchestrate a work stoppage during a pandemic and ordered him placed in Administrative Segregation. *Id.* ¶¶ 42-44. He must complete the Administrative Segregation Program at Northern and Garner Correctional Institutions. *Id.* ¶¶ 47, 49. The plaintiff's placement was affirmed by defendant Mulligan

on appeal. *Id.* ¶ 54.

II.     Discussion

The only remaining claim in this action is for denial of due process at the administrative segregation hearing. The defendants argue that the plaintiff received all required process, the plaintiff failed to demonstrate the personal involvement of all remaining defendants in this due process claim, and they are protected by qualified immunity.

   A.  Due Process

The defendants first argue that the plaintiff received appropriate process. As the Court explained on initial review, to state a claim for violation of his right to procedural due process, the plaintiff must allege facts showing that he had a protected liberty interest and that he was deprived of that interest without being afforded due process of law. *See Walker v. Fischer*, 523 F. App'x 43, 44 (2d Cir. 2013) (citing *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001)). The Due Process Clause, standing alone, generally does not create a protected liberty interest in conditions of confinement as long as the conditions are "within the normal limits or range of custody which the conviction has authorized the State to impose." *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (finding no protected liberty interest in freedom from interstate prison transfer, even to a maximum security facility, because prison officials have discretion to transfer prisoners among correctional facilities "for whatever reason or for no reason at all"). However, there are circumstances under which a state statute, policy, or regulation can create a protected liberty interest relating to conditions of confinement.

In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court held that a liberty interest warranting due process protection "will generally be limited to freedom from restraint which,

3

while not exceeding the sentence in such an unexpected manner as to give rise to protection under the Due Process Clause of its own force . . . nonetheless imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484. The Second Circuit has held that the *Sandin* analysis should be applied to determine if placement in non-punitive administrative segregation implicates a protected liberty interest. *Arce v. Walker*, 139 F.3d 329, 334-35 (2d Cir. 1998). To determine whether conditions of segregated confinement are atypical and significant, the court considers both the duration of segregated confinement and the conditions of that confinement. *Palmer v. Richard*, 364 F.3d 60, 64 (2d Cir. 2004); *see also Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000) ("[T]he duration of [segregated confinement is a distinct factor bearing on atypicality and must be carefully considered.").

On initial review, the Court assumed that the plaintiff's placement in the Administrative Segregation Program implicated a protective liberty interest. ECF No. 10 at 7-8. The defendants do not challenge that assumption. They argue instead that the plaintiff received all the process he was due. Thus, for purposes of deciding this motion, the Court again assumes that the plaintiff's placement implicates a protected liberty interest.

The Supreme Court requires that an inmate sent to Administrative Segregation be afforded "some notice of the charges against him and an opportunity to present his views to the prison officials charged with deciding whether to transfer him to administrative segregation." *Hewitt v. Helms*, 459 U.S. 460, 476 (1983). Due process also requires that the decision be supported by "some evidence." *Superintendent Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985). *See Banks v. Michaud*, No. 3:20-cv-326(JAM), 2020 WL 7188476, at *4 (D. Conn. Dec.

4

7, 2020) (placement in administrative segregation requires that prisoner be afforded only "some notice of the basis for restrictive terms of confinement and an opportunity to present his views"). Where, as here, the decision to place an inmate in administrative segregation is made in a separate proceeding, held after disciplinary charges have been resolved, the informal procedures in *Hewitt* are all that are required. *See Milner v. Lewis*, 3:14-cv-1544(VLB), 2017 WL 1024268, at *8 (D. Conn. Mar. 16, 2017) ("'where the inquiry draws more on the experience of prison administrators and where the State's interest implicates the safety of other inmates and prison personnel, the informal, nonadversary procedures set forth in ... *Hewitt*, provide the appropriate model'" (quoting *Wilkinson v. Austin*, 545 U.S. 209, 228-29 (2005))).

The defendants argue that these requirements were met. The plaintiff received notice of the charges and participated in the hearing with the assistance of an advisor. He both spoke at the hearing and submitted a written statement expressing his views and version of events. The plaintiff contends, however, that the defendant should have reviewed the video surveillance tapes to confirm his view of events rather than relying on the "sources of information," *i.e.*, confidential inmate informants. The plaintiff also argued in his complaint that he was not permitted to confront the sources of information. In his opposition papers, however, he concedes that he has no right to confront confidential sources. ECF No. 20 at 3.

*Hewitt* does not require that the hearing officer consider all possible evidence. It only requires that the decision be supported by some evidence. The plaintiff stated what he was doing and what would be seen on the video footage. As the footage does not contain audio, it cannot show what the plaintiff was speaking about with other inmates, *i.e.*, whether he was only trading commissary or speaking of other things while purporting to trade commissary. The hearing

officer did have some evidence, namely, the statements of the "sources of information." However, that does not end the inquiry.

In the Initial Review Order, the Court noted that the Second Circuit has previously considered the use of confidential information in connection with a gang classification, also an administrative proceeding.  *See* ECF No. 10 at 8 (citing *Taylor v. Rodriguez*, 238 F.3d 188 (2d Cir. 2001)).  In *Taylor*, the court held that a decision based on confidential information must include "examination of indicia relevant to an informant's credibility" to ensure a fair hearing and discipline based on reliable evidence.  *Id.* at 194.  Failure to do so prevents the court from determining that the decision was based on some reliable evidence.

The identities of the sources of information were concealed from the plaintiff and the copies of the hearing documents attached to the Complaint do not show that Hearing Officer Tugie made the requisite examination to assess the credibility of the sources of information. Thus, the Court cannot determine whether the decision was supported by some reliable evidence such that defendant Tugie complied with the requirements of due process.  Defendant Mulligan upheld the placement on appeal, even though the papers contained no examination of the credibility of the sources of information.  As the defendants do not address the failure to comply with *Taylor* in their motion to dismiss, the motion is denied as to the due process claims against defendants Tugie and Mulligan.

B.  Personal Involvement

The defendants next move to dismiss the claims against defendants Maiga and Mulligan for lack of personal involvement.  Although the defendants do not include Warden Caron in this argument, it applies equally to her.  As a director, acting deputy commissioner, and warden,

6

defendants Maiga, Mulligan, and Caron are supervisory officials.  After the Court conducted its initial review of the Complaint, the Second Circuit clarified the standard to be applied to a claim of supervisory liability.  *Tangreti v. Bachman*, 983 F.3d 609 (2d Cir. 2020).  The Second Circuit adopted the Supreme Court's reasoning in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and held that "after *Iqbal*, there is no special rule for supervisory liability.  Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"  *Tangreti*, 983 F.3d at 618 (quoting *Iqbal,* 556 U.S. at 676).

      The plaintiff alleges that defendant Mulligan denied his administrative segregation appeal.  Thus, he should have reviewed the hearing documents and ensured that the examination required by *Taylor* was conducted.  He did not do so.  Thus, the plaintiff has sufficiently alleged defendant Mulligan's personal involvement in his due process claim.  The motion to dismiss is denied as to the claim against defendant Mulligan.

      Defendants Maiga and Caron did not directly participate in the administrative segregation hearing or appeal.  The plaintiff alleges only that defendant Maiga was responsible for the decision to place him at Northern Correctional Institution and defendant Caron recommended a hearing for placement on administrative segregation status.  ECF No. 1 ¶¶ 9-10.  As the plaintiff does not allege that either defendant was involved in the administrative segregation hearing, neither is responsible for any alleged denial of due process at that hearing.  The defendants' motion to dismiss is granted as to the claim against defendants Maiga for lack of personal involvement.  The claim against Warden Caron is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) (requiring the court to dismiss at any time, allegations that fail to state a cognizable claim).

C. Qualified Immunity

Finally, the defendants argue that they are protected by qualified immunity, which may be invoked "when, even though plaintiff's federal rights and the official's permissible actions were clearly delineated at the time of the action complained of, it was nonetheless 'objectively reasonable' for the defendant official 'to believe that his acts did not violate those rights.'" *Rodriguez v. Phillips*, 66 F.3d 470, 475 (2d Cir. 1995).

Qualified immunity would be denied to an official only if (1) the facts alleged or shown by the plaintiff state a violation of a statutory or constitutional right by the official and (2) the right was clearly established at the time of the challenged conduct. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted). The district court has discretion to determine, in light of the particular circumstances surrounding the case, which of the two prongs of the qualified immunity standard to address first. *See Johnson v. Perry*, 859 F.3d 156, 170 (2d Cir. 2017) (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

Qualified immunity "affords government officials 'breathing room' to make reasonable—even if sometimes mistaken—decisions." *Distiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 553 (2012)). "The qualified immunity standard is 'forgiving' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017) (quoting *Amore v. Novarro*, 624 F.3d 522, 530 (2d Cir. 2010)).

In considering whether a right is clearly established, the court must consider Supreme Court or Second Circuit cases and determine what a reasonable officer would understand in light

of that law.  *Terebesi v. Torreso*, 764 F.3d 217, 231 (2d Cir. 2014); *see Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("district court decisions—unlike those from the courts of appeal—do not necessarily settle constitutional standards or prevent repeated claims of qualified immunity"). The court considers whether a holding prohibits the conduct in question as well as whether decisions clearly foreshadow such a ruling.  *Terebesi*, 764 F.3d at 231.  Absent a "case of controlling authority" or "a consensus of cases of persuasive authority," the officers "cannot have been 'expected to predict the future course of constitutional law.'"  *Wilson v. Layne*, 526 U.S. 603, 617 (1999) (quoting *Procunier v. Navarette*, 434 U.S. 555, 562 (1978)).

As explained above, the Second Circuit has held that the court cannot determine that an administrative segregation decision is based on some evidence where the decision is based on confidential information and there has been no finding that the sources of that information are credible.  As *Taylor* was decided in 2001, the plaintiff's right to have such a determination was clearly established at the time of the hearing.  The record contains no evidence of a credibility determination and the defendants do not address this requirement in their motion.  The Court concludes that it was not objectively reasonable for defendant Tugie to believe that she did not need to assess the credibility of the sources on the record and for defendant Mulligan to affirm the finding absent the assessment.  The Court concludes that defendants Tugie and Mulligan are not protected by qualified immunity on the current record.

III.     Conclusion

The defendants' motion to dismiss [**ECF No. 17**] is **GRANTED** as to defendant Maiga and **DENIED** without prejudice as to defendants Tugie and Mulligan**.**  The due process claim against Warden Caron is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**SO ORDERED** at Hartford, Connecticut, this 26th day of April 2021.

/s/
Michael P. Shea
United States District Judge