# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| | : | |
| WILFREDO MUNIZ, | : | |
| Plaintiff, | : | CASE NO. 3:20-cv-1533 (MPS) |
| | : | |
| v. | : | |
| | : | |
| ROLLING COOK, et al., | : | |
| Defendants. | : | DECEMBER 15, 2021 |
| | : | |

---

## RULING ON MOTION FOR SUMMARY JUDGMENT

The plaintiff, Wilfredo Muniz, commenced this civil rights action *pro se* asserting claims for denial of due process in two hearings – a disciplinary hearing and a hearing to consider whether to place the plaintiff in administrative segregation. The Court earlier dismissed the plaintiff's claims regarding the disciplinary hearing. (ECF No. 10.) This ruling discusses whether the Court should grant the motion for summary judgment filed by the remaining defendants as to the plaintiff's claim for denial of due process regarding the Administrative Segregation hearing. For the following reasons, the Court concludes that it should and GRANTS the defendants' motion.

I.      Facts[1]

---

[1] The facts are taken from the parties' Local Rule 56(a) Statements and exhibits. Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement that contains separately numbered paragraphs corresponding to the moving party's Local Rule 56(a)1 Statement and indicates whether the opposing party admits or denies the facts set forth by the moving party. Each denial must include a specific citation to an affidavit or other admissible evidence. D. Conn. L. Civ. R. 56(a)3.

     The defendants informed the plaintiff about his obligation to respond to the motion for summary judgment. ECF No. 54-3. Although the plaintiff filed a Local Rule 56(a)2 Statement, he has cited no evidence to support his denials. Thus, the defendants' facts are deemed admitted. *See* D. Conn. L. Civ. R. 56(a)1 ("All material facts set forth in said statement and supported by the evidence will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with Rule 56(a)2.").

Administrative Segregation is a classification status that segregates inmates whose behavior or management factors pose a threat to the security of the facility or a risk to the safety of other inmates and staff such that the inmates can no longer be safely managed in general population.  Defs.' Local Rule 56(a)1 Statement, ECF No. 54-1, ¶ 8.  Administrative Segregation placement is a classification decision, not a disciplinary decision.  *Id.*

By notice dated May 4, 2020, the plaintiff was informed that he was being considered for Administrative Segregation placement.  *Id.* ¶ 9.  The plaintiff signed the notice, acknowledging receipt on May 11, 2020.  *Id.* ¶ 10.  The plaintiff was offered a choice of advisor for the hearing process and requested one.  *Id.* ¶ 11.

The Incident Report Package for the incident underlying the placement hearing includes several references to Sources of Information ("SOIs"), i.e., confidential informants.  *Id.* ¶ 12.  It is the responsibility of the facility intelligence unit to vet the SOIs.  *Id.*  Inmates providing information that results in an investigation, disciplinary action, or criminal charges are referred to as SOIs rather than by name for the inmates' protection.  *Id.* ¶ 13.  An SOI who provides false information may receive a disciplinary report and sanctions.  *Id.* 14.  SOIs are told they will receive no benefit or special treatment, other than concealment of their identity, for providing information.  *Id.* ¶ 15.  They are not granted special privileges and remain subject to the same disciplinary rules as other inmates.  *Id.*  SOIs generally are interviewed in person in a location that will not reveal their status as informants to other inmates or staff.  *Id.* ¶ 16.  The interview process enables correctional officials to develop a rapport with the SOI and to assess his demeanor, determine his credibility, and investigate his motivation for providing the information

and any personal biases.  *Id.* ¶¶ 17-18.  The official also evaluates the detail, plausibility, timeliness, and consistency of the SOI's statement.  *Id.* ¶ 19.

In April 2020, an SOI told Lieutenant Ouellette that several inmates, whom he identified, were attempting to orchestrate a work stoppage.  *Id.* ¶ 20.  Lieutenant Ouellette interviewed the SOI in person to assess his demeanor, determine his motivation in making the report, and determine whether the SOI had any issues with the inmates he identified.  *Id.* ¶ 21.  Lieutenant Ouellette found the initial SOI credible because he came forward on his own, had no identifiable personal biases, and had a history of working with law enforcement.  *Id.* ¶ 22.

The initial SOI's report was corroborated by three additional SOIs.  *Id.* ¶ 23.  These inmates also were interviewed to assess their demeanors, their motivations, and any personal biases.  *Id.*  Correctional staff found no personal biases or motivations to fabricate the information in any of the three corroborating SOIs.  *Id.*  Correctional staff monitored phone calls of other inmates.  *Id.* ¶ 24.  Information from the calls corroborated the statements of the four SOIs.  *Id.*

On May 12, 2020, six days before the Administrative Segregation hearing at issue here, the plaintiff attended a disciplinary hearing on a charge of impeding order before Disciplinary Hearing Officer ("DHO") Lieutenant Grimaldi.  *Id.* ¶ 25.  As the disciplinary charge was based on the same incident, DHO Grimaldi reviewed the incident report, disciplinary report, SOI statements, and disciplinary investigation report in preparation for the hearing.  *Id.* ¶ 26.  DHO Grimaldi also spoke with Lieutenant Ouellette to assess the SOIs' credibility.  *Id.* ¶ 28.  DHO Grimaldi considered whether any SOI had personal biases or motivations to provide false statements, whether the statements included sufficient detail, whether they were timely made,

and whether each statement was consistent with the other statements and other information gathered in the investigation.  *Id.* ¶ 29.  He also considered whether the inmates had a history of providing accurate information.  *Id.*  The statements identified the plaintiff as participating in the work stoppage based on personal observation.  *Id.* ¶ 30.  The statements were consistent with each other and with the information learned from telephone monitoring.  *Id.*

At the disciplinary hearing, the plaintiff submitted a written statement saying that video footage would have shown him speaking to and exchanging commissary items with other kitchen workers and argued that this conduct was unrelated to a work stoppage.  *Id.* ¶ 31.  DHO Grimaldi did not find the plaintiff's statement credible and noted that the plaintiff's description of his actions was consistent with the SOIs' statements.  *Id.* ¶ 32.  DHO Grimaldi found the SOIs credible based on his assessment of their statements, biases, and motivations, and the corroborating evidence.  *Id.* ¶ 33.  DHOs generally do not interview SOIs because repeated staff interviews, especially by a DHO, could risk identification of the SOIs.  *Id.* ¶ 34.  In addition, the investigating officers have developed a rapport with the SOIs and are better placed to ask any additional questions the DHO may have in assessing their credibility.  *Id.*  The plaintiff was found guilty of the disciplinary charge and received several sanctions.  *Id.* ¶ 35.

On May 18, 2020, the plaintiff attended the Administrative Segregation hearing.  *Id.* ¶ 36.  Defendant Tugie was the hearing officer.  *Id.* ¶ 7.  The plaintiff made an oral statement, which was transcribed and included in the hearing report, and submitted the same written statement he submitted at the disciplinary hearing.  *Id.* ¶ 36.  Following the hearing, Officer Tugie reviewed the plaintiff's written statement, an April 7, 2020 memorandum from Warden Caron to Director Maiga, and the incident package, which included the disciplinary reports and SOIs' statements.

4

*Id.* ¶ 37.  On May 22, 2020, defendant Tugie recommended that the plaintiff be placed on Administrative Segregation status.  *Id.* ¶ 38.  The recommendation was forwarded to and approved by Director Maiga.  *Id.* ¶¶ 38-39.

In reaching her decision, defendant Tugie considered the incident report package, the plaintiff's disciplinary history, and whether there were any past management issues with the plaintiff.  *Id.* ¶ 40.  Defendant Mulligan upheld the determination on appeal.  *Id.* ¶¶ 42-44.  In deciding the appeal, defendant Mulligan reviewed the hearing report and all submitted evidence. *Id.* ¶ 43.  He found no error or omission in the process afforded the plaintiff at the hearing.  *Id.* ¶ 44.  If he had found an error, the matter would have been referred to the Director of Offender Classification and Population Management for correction.  *Id.* ¶ 47.  Defendant Mulligan was not involved in the hearing itself or the plaintiff's placement in Administrative Segregation.  *Id.* ¶ 45.

On December 20, 2020, the plaintiff was removed from Administrative Segregation status.  *Id.* ¶ 48.

II.    Legal Standard

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56; *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107, 113-14 (2d Cir. 2017).  "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Nick's Garage*, 875 F.3d at 113-14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett,*

477 U.S. 317, 323 (1986).  Once the moving party meets this burden, the nonmoving party must

set forth specific facts showing that there is a genuine issue for trial.  *Wright v. Goord*, 554 F.3d

255, 266 (2d Cir. 2009).  He cannot "'rely on conclusory allegations or unsubstantiated

speculation' but 'must come forward with specific evidence demonstrating the existence of a

genuine dispute of material fact.'"  *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 34 (2d

Cir. 2015) (citation omitted).  To defeat a motion for summary judgment, the nonmoving party

must present such evidence as would allow a jury to find in his favor.  *Graham v. Long Island

R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

Although the court is required to read a self-represented "party's papers liberally and

interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d

51, 62 (2d Cir. 2015), the self-represented party cannot "rely on mere speculation or conjecture

as to the true nature of the facts to overcome a motion for summary judgment"; "conclusory

allegations or denials … are not evidence and cannot by themselves create a genuine issue of

material fact where none would otherwise exist."  *Federal Trade Comm'n v. Moses,* 913 F.3d

297, 305 (2d Cir. 2019) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995))

(internal quotation marks and alteration omitted).

III.   Discussion

Following the Court's ruling on the defendants' motion to dismiss (ECF No. 24), the

remaining issues in this case are whether (1) defendant Tugie failed to examine sufficient

"indicia of reliability" of the SOI statements provided during an investigation into whether the

plaintiff orchestrated a work stoppage, and (2) whether defendant Mulligan violated the

plaintiff's rights by upholding the decision for Administrative Segregation placement on appeal.

*See* ECF Nos. 10, 24.  The defendants move for summary judgment on four grounds: (1) sufficient evidence supported defendant Tugie's decision, (2) the plaintiff was not prejudiced by the decision, (3) the plaintiff failed to establish that defendant Mulligan violated his right to due process by his own actions, and (4) the defendants are protected by qualified immunity.  I find that although Tugie failed to conduct an independent examination of the reliability of the SOI statements, this failure did not violate the plaintiff's due process rights, because the other evidence Tugie relied on was sufficient, without the SOI statements, to satisfy the relatively low evidentiary standard applicable here.  And because Tugie did not violate the plaintiff's rights by deciding to recommend administrative segregation, Mulligan did not do so by upholding her decision.  Further, recent case law indicates that Mulligan cannot be held liable merely for reviewing and approving another's adjudication of a disciplinary charge or classification, which is all that Mulligan did here.  The Court therefore grants summary judgment to the defendants.

      A.      <u>Relevant Due Process Principles</u>

In *Wilkinson v. Austin*, 545 U.S. 209 (2005), the Supreme Court considered the process due inmates in connection with their classification and transfer to Ohio's highest security prison. Before any amount of process is required by the Constitution, an inmate must demonstrate that he has a protected liberty interest in avoiding the classification at issue.  *Id.* at 221 (before invoking procedural protections of the Due Process Clause, inmate must establish deprivation of an interest in life, liberty, or property).  The Constitution does not create a liberty interest in avoiding transfer to more adverse conditions of confinement.  *Id.* (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)).

A liberty interest may arise under state regulations, but only if the restraint imposed,

"while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.,* at 222-23 (quoting *Sandin v. Conner*, 515 U.S. 472, 483–84 (1995) (internal quotation marks omitted)).  The defendants concede, for purposes of this motion, that the plaintiff's confinement in administrative segregation implicates a protected liberty interest.

The Supreme Court requires that the inmate be afforded "some notice of the charges against him and an opportunity to present his views to the prison officials charged with deciding whether to transfer him to administrative segregation." *Hewitt v. Helms*, 459 U.S. 460, 476 (1983).  A written statement from the inmate generally satisfies this requirement, although the hearing officer may permit an oral presentation if he would find it more useful. *Id.*; s*ee Banks v. Michaud*, No. 3:20-cv-326(JAM), 2020 WL 7188476, at *4 (D. Conn. Dec. 7, 2020) (placement in administrative segregation requires that prisoner be afforded only "some notice of the basis for restrictive terms of confinement and an opportunity to present his views").  In addition, due process requires that the decision be supported by "some evidence." *Superintendent Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985); *see Hewitt*, 459 U.S. at 476 (due process is satisfied where hearing officer "reviews the charges and then-available evidence against the prisoner"). "Some evidence" really means "some *reliable* evidence." *Elder v McCarthy*, 967 F.3d 113, 129 (2d Cir. 2020)( "In this circuit …, we have not construed the phrase 'any evidence' literally. Rather, we have required that such disciplinary determinations be supported by some *reliable* evidence of guilt." (emphasis in original; internal quotation marks and citation omitted)).

When determining whether a hearing decision is supported by "some evidence," a reviewing court determines only "whether there is any evidence in the record that could support the conclusion reached"; the court's review "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing the evidence." *Hill*, 472 U.S. at 455-56 (citation omitted).

Where, as here, the decision to place an inmate in Administrative Segregation is made in a separate proceeding held after disciplinary charges have been resolved, the informal procedures in *Hewitt* are all that are required. *See Milner v. Lewis*, 3:14-cv-1544(VLB), 2017 WL 1024268, at *8 (D. Conn. Mar. 16, 2017) ("'[W]here the inquiry draws more on the experience of prison administrators and where the State's interest implicates the safety of other inmates and prison personnel, the informal, nonadversary procedures set forth in … *Hewitt*, provide the appropriate model.'" (quoting *Wilkinson*, 545 U.S. at 228-29)).

B.   Tugie

The Court denied the motion to dismiss the due process claim against Tugie because the plaintiff alleged that she based her decision on the SOIs' statements and the Court could not determine whether Tugie sufficiently evaluated the credibility of the SOIs as required by the Second Circuit. *See Taylor v. Rodriguez*, 238 F.3d 188, 194 (2d Cir. 2001) (decision based on information from confidential informant must include "examination of indicia relevant to an informant's credibility" to ensure a fair hearing based on reliable evidence). The defendants argue that Tugie was entitled to rely on the credibility of the SOIs because their credibility had been previously assessed by Lieutenant Ouellette and DHO Grimaldi. They also contend that there was sufficient evidence apart from the SOIs' statements to satisfy the "some evidence"

standard.  The Court disagrees with the first argument but agrees with the second.

In *Sira v. Morton*, 380 F.3d 57 (2d Cir. 2004), after acknowledging "some ambiguity in our case law whether a hearing officer must make an independent assessment of informant credibility to ensure that disclosures qualify as some reliable evidence, or whether he can simply rely on the opinions of prison officials who have dealt with the informants," *id.* at 77, the Second Circuit held that an independent credibility assessment by the hearing officer was required.  *Id.* at 77-78.  It is true that *Sira* involved a disciplinary hearing, rather than an administrative classification hearing, and thus involved application of the more demanding procedures of *Wolff v. McDonnell*, 418 U.S. 539 (1974), as opposed to the relaxed procedures of *Hewitt* at issue here.  *See* 380 F.3d at 69 (noting that under *Wolff*, "an inmate is entitled to advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken.").  But the *Sira* court used broad language about the responsibilities of hearing officers that betrayed no hint of limitation depending on the type of hearing involved: "Where good reasons justify withholding confidential evidence from the inmate, the hearing officer … has the singular responsibility for ensuring that he has been provided with all the facts and circumstances necessary to make an informed assessment of reliability." *Id.* at 79.  Thus, while Tugie was not required to personally interview the SOIs, she was required to perform "'some examination' of indicia relevant to the informant[s'] credibility." *Sowell v. Weed*, No. 07-CV-6355(MAT), 2013 WL 3324049, at *11-12 (W.D.N.Y. July 1, 2013).

10

To be sure, this case involves an additional layer of complexity not present in *Sira*, i.e., it involves a credibility determination by a hearing officer presiding over a *Hewitt* hearing that followed closely on the heels of and relied on a previous credibility determination by a hearing officer presiding over a *Wolff* hearing.  But nothing in *Sira* suggests that such piggybacking – without some independent examination and judgment by the hearing officer presiding over the later hearing – would satisfy due process.  And so the statements in Tugie's declaration that she relied on the facility intelligence unit to make credibility determinations do not satisfy the standard of independent examination set forth in *Sira*. See ECF No. 54-4 at 4; *see also Sira*, 380 F.3d at 80 ("Due process does not permit a hearing officer simply to ratify the bald conclusions of others; it requires some inquiry to determine whether the totality of facts and circumstances reasonably supports the proffered conclusion.").

That does not end the inquiry, however, because Tugie relied on more than the SOIs' statements in recommending Administrative Segregation for the plaintiff. She also reviewed the incident report, the disciplinary report, the disciplinary hearing documents, and the plaintiff's written and oral statements.  Defs.' Mem. Ex. A, Decl. of Counselor Supervisor Tugie, ECF No. 54-4 at 4, ¶ 14.  She noted that the plaintiff stated that video surveillance footage would show him speaking to other inmates and exchanging items with them.  Although the video footage was unavailable – a point the plaintiff stresses in his opposition brief, in which he urges the Court to make a finding of spoliation – Tugie found that it would have made no difference.  Even accepting the plaintiff's claim that the footage would have shown him approaching and speaking to other inmate kitchen workers, she found this would not have exonerated him from the claim of orchestrating a work stoppage, because the footage lacked an audio component and there was

nothing to show the content of the plaintiff's conversations with the other inmates . *Id.* ¶ 13.  In fact, Tugie found, plaintiff's admission that he was speaking with other kitchen workers "corroborated the results of the facility investigation." *Id.*

In addition, Tugie reviewed and relied on the "incident report package," which includes several disciplinary reports issued for the same incident. *Id.* at ¶ 14.  While the disciplinary reports include references to the SOIs' statements, they also include first-hand and second-hand reports by correctional officers and reports regarding the telephone monitoring. *See* ECF No. 54-5.  Further, while Tugie did not independently vet the SOIs' statements, her averment that the plaintiff's testimony that the video footage would show him interacting with kitchen workers "corroborated the results of the facility investigation," ECF No. 54-4 id. at ¶ 13, finds support in the SOIs' statements reported in the disciplinary reports.  See ECF No. 54-5 at 12 (SOI reportedly stating that plaintiff and others "were trying get all Kitchen Workers together to start a 'work stoppage' to prevent food trays from being made and delivered to the blocks within the facility.").  Courts have found that the issuance of a disciplinary report coupled with the inmate's testimony sufficient to constitute "some evidence." *See Creech v. Schoellkoph*, 688 F. Supp. 2d 205, 214 (W.D.N.Y. 2010) (review of disciplinary report and inmate's testimony sufficient to constitute "some evidence"); *Gibson v. Rosati*, No. 9:13-cv-00503(GLS/TWD), 2017 WL 1534891, at *15 (N.D.N.Y. Mar. 10, 2017) (granting summary judgment on claim where hearing officer based decision on inmate misbehavior reports, investigation reports, use of force reports, and inmate's testimony), *report and recommendation adopted*, 2017 WL 1512371 (N.D.N.Y. Apr. 27, 2017).  The disciplinary report and the plaintiff's testimony at the disciplinary hearing constitute "some evidence" to support defendant Tugie's finding, and Tugie stated that she

12

would have "come to the same recommendation to place Muniz in [Administrative Segregation] given the other evidence I reviewed" "[e]ven without the SOI information." ECF No. 54-4 at ¶ 19. Thus, the motion for summary judgment is granted as to the claim against Tugie on the ground that her decision was supported by some evidence.

C.   Mulligan

Because there was "some evidence" to support Tugie's decision and it otherwise comported with due process, Mulligan cannot be liable for upholding that decision. The defendants also argue that the plaintiff fails to demonstrate the personal involvement of defendant Mulligan in the alleged violation of his constitutional rights. The Court agrees with this argument too.

"It is well settled in this Circuit that personal involvement of the defendants in alleged deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks omitted). To establish a claim of supervisory liability, the "plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). The plaintiff alleges that Mulligan violated his rights by denying his Administrative Segregation appeal. Even before *Tangreti*, however, "the Second Circuit noted that it is 'questionable whether an adjudicator's rejection of an administrative grievance would make him liable for the conduct complained of.'" *Rooks v. Santiago*, No. 3:20-cv-299(MPS), 2021 WL 2206600, at *3 (D. Conn. June 1, 2021) (quoting *McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004)). Since *Tangreti*, district courts have held that review of a grievance, administrative, or disciplinary

13

appeal is insufficient to establish the reviewer's personal involvement in claims relating to the underlying proceeding. *See Rooks*, 2021 WL 2206600, at *3 (allegations that District Administrator Mulligan denied grievance appeals regarding Security Risk Group placement insufficient to show his personal involvement in alleged Fourteenth Amendment violation arising from Security Risk Group affiliation or placement); *Brown v. Annucci*, No. 19cv9048(VB), 2021 WL 860189 at *9 (S.D.N.Y. Mar. 8, 2021) (denial of disciplinary appeal does not establish personal involvement for due process challenge to disciplinary proceeding); *Smart v. Annucci*, No. 19cv7908(CS), 2021 WL 260105 at *5  (S.D.N.Y. Jan. 26, 2021) (denying administrative appeal insufficient to establish personal involvement); *Brown v. Department of Corr.*, No. 3:16-cv-376(WIG), 2021 WL 124417, at *11 (D. Conn. Jan. 12, 2021) (*pro forma* denial of a grievance appeal does not establish personal involvement).

Finally, the argument the plaintiff offers in his brief to oppose summary judgment as to Mulligan lacks merit.  The plaintiff contends that the video surveillance footage he had requested be preserved would have exonerated him from the charge of orchestrating a work stoppage and that Mulligan denied him due process by deciding the case without reviewing the footage.  As already shown, however, the plaintiff's description of the video footage supports Tugie's decision, and because the video footage included no audio component, it could not have helped him in any event.  Even if the footage showed what the plaintiff said it would show, it would not reveal whether the plaintiff was attempting to trade or sell pictures or was trying to organize a work stoppage.  Thus, the footage would only have confirmed that the plaintiff spoke to numerous kitchen workers during the relevant time period – just as the disciplinary reports suggest.  Mulligan did not violate the plaintiff's right to due process by reviewing the appeal

14

without also reviewing video footage.  The defendants' motion for summary judgment is granted as to the claim against Mulligan.

       D.    <u>Injunctive Relief</u>

The plaintiff seeks injunctive relief in the form of an order that the defendants remove the disciplinary charge from his file and submit a written apology.  The defendants point out that all claims relating to the disciplinary report were dismissed on initial review.   As all claims relating to the disciplinary charge were dismissed, there is no basis upon which to award the requested injunctive relief.  The defendants' motion is granted.

IV.    <u>Conclusion</u>

The defendants' motion for summary judgment [**ECF No. 54**] is **GRANTED.**  The Clerk is directed to enter judgment in favor of the defendants and close this case.

**SO ORDERED** this 15th day of December 2021 at Hartford, Connecticut.

                        /s/

                        Michael P. Shea
                        United States District Judge